COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Russell and Senior Judge Frank

RONALD PERRY

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2350-14-2                            PER CURIAM
                                                         JUNE 9, 2015
PRINCE GEORGE DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
Nathan C. Lee, Judge

(John A. Kirkland, on brief), for appellant. Appellant submitting on
brief.

(Joan M. O'Donnell; Rosalyn P. Vergara, Guardian *ad litem* for the
minor child, on brief), for appellee. Appellee and Guardian *ad
litem* submitting on brief.


Ronald Perry (father) appeals an order terminating his parental rights to his child. Father

argues that the trial court erred by finding that the evidence was sufficient to terminate his parental

rights (1) pursuant to Code § 16.1-283(B) "because the conditions which led to the neglect and

abuse could be substantially corrected or eliminated to allow the child's safe return to appellant;"

(2) pursuant to Code § 16.1-283(C)(1) "because the appellant has maintained continuing contact

with and substantially planned for the future of the child for a period of six months after the child's

placement in foster care;" and (3) pursuant to Code § 16.1-283(C)(2) "because the appellant has

substantially remedied the conditions which led to the child's foster care placement." Upon

reviewing the record and briefs of the parties, we conclude that the trial court did not err.

Accordingly, we affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father and Nicole Cross are the parents of the minor child who is the subject of this appeal. The child was born in January 2010. Father also has four children with Wilma Gibson. Two children, not related to father, were removed from Gibson's care because they had been sexually abused.

The Prince George Department of Social Services (the Department) first became involved in September 2012 when it received a report that Cross had sexual relations with a minor child of father and Gibson. Cross was convicted of two counts of consensual intercourse with a minor and sexual battery.

On December 3, 2012, the Hopewell Juvenile and Domestic Relations District Court awarded joint legal custody of the child to Cross and Gibson and physical custody to Gibson. In January 2013, the Department learned that Gibson allowed Cross to stay in her home after Cross had been convicted of sexual relations with the minor. Father was incarcerated at the time.

The Department filed an abuse and neglect petition, and received custody of the child on March 12, 2013.

The Department had four major issues with father, namely mental health support, budgeting of finances, counseling, and psychological issues. Father had been diagnosed with paranoid schizophrenia. He participated in a psychological evaluation, but his participation in psychiatric services was "inconsistent." The Department verified that his last appointment with his therapist was in February 2014. He did not discuss the child or Cross with his therapist. The social worker testified that father's mental health had not changed while the child was in foster care.

Father has been declared disabled and receives $884 per month in SSI benefits. Gibson is father's payee and handles his financial affairs. Despite the Department's requests, father did not provide verification of his housing and utility payments.

Father also has a criminal history. From 2003 until 2012, father had been convicted of three counts of drunk in public, trespassing, possession of cocaine, failure to report to pretrial supervision, violation of pretrial supervision due to a positive drug test, probation violation due to a positive drug test, and failure to appear in court.

In addition, father has a history of homelessness. Since September 2013, he has lived with Cross, but his name is not on the lease.

Father regularly visited the child from March 12, 2013 until September 2014 when his parental rights were terminated. He visited approximately twice a month.

While in foster care, the child participated in a psychological clinical interview and was diagnosed with Adjustment Reaction with Mixed Features of Emotion and Behavior. The child also has developmental and speech delays. The child is in counseling and will need therapy for several years.

On June 5, 2014, the Department filed a petition to terminate father's parental rights. The Prince George Juvenile and Domestic Relations District Court terminated father's parental rights and approved the goal of adoption. Father appealed to the circuit court.

The parties appeared before the circuit court on December 2, 2014. After hearing the evidence and argument, the circuit court found that it was in the child's best interests to terminate father's parental rights pursuant to Code § 16.1-283(B), (C)(1), and (C)(2). This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Code § 16.1-283(B)*

Father argues the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(B) because there was no evidence that "the conditions which led to the neglect and abuse could be substantially corrected or eliminated to allow the child's safe return to appellant." Father contends the abuse and neglect resulted from Gibson allowing Cross to live with her after Cross was convicted of the sexual offenses. Father argues that he was incarcerated while Gibson and Cross lived together, and he has not lived with Gibson since June 2013. He also asserts that his mental illness is not so severe that he could not take care of the child.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.
>
> Proof of any of the following shall constitute prima facie evidence of the conditions set forth in subdivision B 2:
>
> a. The parent or parents have a mental or emotional illness or intellectual disability of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development . . . .

Here, the evidence proved that father was diagnosed with paranoid schizophrenia. He could not provide the Department with information regarding his medication or treatment. The Department could only verify that father's last appointment with his therapist was February 2014. He did not discuss Cross or the child with his therapist.

The Department had other concerns about father's ability to care for the child. The Department noted that father had "very little insight regarding keeping [the child] safe." He denied the sexual abuse issues with the family, and he did not believe that anyone would harm his child. He also has a history of homelessness and several convictions relating to substance abuse. Father did not follow through with recommended services. Furthermore, father relied on Gibson to handle his financial affairs. She was the payee on his disability check. He could not provide the Department with proof that he could financially take care of the child.

The child has several delays and needs ongoing therapy. The child's therapist explained, "It is obvious that [the child] will need multiple therapies that will entail many different professionals. That will require an ability to organize and structure [the child's] schedule in order to meet all of those needs on a consistent basis." The counselor further stated, "I would encourage all of those involved with [the child] to consider the consequences to him if those who would care for him are not consistent, and in the long term, capable and appropriate." There was no evidence that father was able to meet the child's mental health needs.

Father's mental illness prevents him from being able to take care of his child. He cannot handle his own affairs, and cannot remember his medication and dosages. Therefore, the trial court did not err in terminating his parental rights pursuant to Code § 16.1-283(B).

*Code § 16.1-283(C)(1)*

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(1) because there was no evidence that father "failed to maintain contact with his

child or substantially plan for the future of the child within six months of [the] child's placement in foster care." Father contends he visited with the child approximately twice per month from March 2013 until September 2014, when his rights were terminated. He asserts that he attended parenting classes, completed a mental health evaluation, and participated in counseling. He receives monthly income and resides in a home.

Code § 16.1-283(C)(1) states a parent's parental rights may be terminated if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Although father visited with the child, he did not present evidence of his plan for the child's future. He was residing in a home, but his name was not on the lease. He received monthly disability benefits, but Gibson was the payee and managed his financial affairs. He attended therapy, but missed several appointments and did not discuss the child or Cross with the therapist. Father did not provide evidence that he could take care of his own mental health needs, and there was no proof that father would be able to provide for the child's mental health needs.

The trial court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(1).

*Code § 16.1-283(C)(2)*

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(2) because there was no evidence that father "failed to substantially remedy the conditions which led to the child's placement in foster care." He asserts that he is no longer homeless, has a monthly income, and participates in counseling.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Contrary to father's arguments, he has not substantially remedied the situation that led to the child being placed and remaining in foster care. Father did not provide proof of his housing and payment of utilities. He was not on the lease. Father did not maintain his counseling appointments and could not provide information about his medications. He relied on others to assist him with finances.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

At the time of the circuit court's hearing, the child had been in foster care for approximately twenty-one months. Father had not substantially remedied the conditions that led to the child being placed and remaining in foster care. The trial court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.